IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

JAMES GOCEL,

     Plaintiff,

     v.

EAST GEORGIA REGIONAL MEDICAL
CENTER, LLC,

     Defendant.

     CV 621-045

---

**O R D E R**

---

Presently pending before the Court are Defendant's motion for summary judgment (Doc. 27) and Plaintiff's motion for summary judgment (Doc. 30).  For the following reasons, Defendant's motion is **DENIED** and Plaintiff's motion is **DENIED**.

## I. BACKGROUND

Plaintiff filed suit against Defendant on June 28, 2021, alleging two claims under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA").  (Doc. 1, at 1.)  First, he asserts an interference claim, arguing Defendant violated the FMLA by failing to notify him of his FMLA rights after learning of his need for leave, failing to allow him FMLA leave, and terminating him.  (Id. at 2-3.)  Second, he asserts a retaliation claim, arguing Defendant violated the FMLA by terminating his employment

due to his need for FMLA leave.  (Id. at 3.)  However, Plaintiff later abandoned his retaliation claim; thus, the only claim pending before the Court is his FMLA interference claim.  (See Doc. 38, at 1 n.1 ("Mr. Gocel has chosen to abandon his FMLA retaliation claim.").)  Both Plaintiff and Defendant move for summary judgment on Plaintiff's FMLA interference claim.  (Docs. 27, 30.)

Plaintiff began his employment with Defendant as a Laboratory Assistant on July 15, 2019 and worked in that position until Defendant terminated him on August 9, 2020.  (Doc. 31, at 1.) Plaintiff's son, SG, was born prematurely in December 2019 and has a history of recurrent respiratory tract infections, Respiratory Syncytial Virus ("RSV"), and chronic lung disease.  (Id. at 2.) SG requires visits to his pediatrician at least twice a year for treatment of his various medical conditions.  (Id. at 3.)  However, SG has never had COVID-19 and has never received inpatient treatment for his RSV infections.  (Doc. 28, at 2.)

Plaintiff's request for leave from work stemmed from his desire to isolate his allegedly immunocompromised child from the risk of contracting COVID-19.  (Id. at 1.)  Dr. Aaron Clarke, SG's doctor, recommended he be quarantined from normal childcare.  (Id. at 2.)  Two letters from Dr. Clark dated July 14, 2020 and November 16, 2020 request Plaintiff's wife, a teacher at the Bulloch County School System, be allowed to teach remotely due SG's "high risk" and that it will keep "contamination to a minimum."  (Id.)  The

2

letters contain no mention of COVID-19 or of Plaintiff. (Id.) Plaintiff sent an email to Defendant's Human Resources Department ("Human Resources") at 9:32 A.M. on July 20, 2020, stating: "I need to apply for a medical leave due to not having child care (sic) for a child with RSV. I only have care available until this Thursday and have informed my manager and team of the situation." (Id. at 3.) The subject line of the email was "FMLA needed." (Doc. 31, at 3.) Human Resources responded to Plaintiff later that morning, instructing him on how to apply for FMLA leave. (Id. at 4.) Plaintiff then obtained an "Employee Activity Request Form" from outside his supervisor's office and requested leave from July 20, 2020 to October 20, 2020. (Doc. 28, at 3.) He requested ninety days because the employee handbook allowed leave for up to that many days. (Id. at 7.)

The Parties agree Human Resource sent Plaintiff an email with leave of absence information and FMLA contact information; however, there is a dispute as to whether Plaintiff received the email because it was sent after he clocked out on that day. (Id. at 4.) Nevertheless, Plaintiff never applied for FMLA leave via FMLA Source, Defendant's third-party FMLA administrator. (Id. at 5.) Regardless of that fact, Defendant granted him leave from July 23, 2020 until August 6, 2020, pending FMLA approval. (Id. at 3.) Plaintiff began his leave on July 23, 2020, and on August 5, 2020, he informed Defendant he had not yet found suitable

childcare and asked how he was to proceed.   (Doc. 31, at 5.) Defendant informed him if he was unable to return to work by August 6, 2020 then he should resign.   (Id.)   Defendant formally terminated Plaintiff on August 9, 2020.  (Id.)  Defendant alleges the reason for termination was its need to staff the medical facility while dealing with the COVID-19 pandemic, and their communication with Plaintiff that if he was not approved for FMLA leave then he would be terminated after his approved leave on August 6, 2020.  (Doc. 28, at 9.)  Plaintiff disputes Defendant's characterization of their discussions regarding FMLA leave.  (Doc. 39, at 8-9.)


## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a motion for summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "An issue of fact is 'material' if . . . it might affect the outcome of the case . . . [and it] is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004) (citations omitted).  The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).  The Court should not weigh the evidence or determine credibility. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted).  A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice.  See e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998).

The movant may "satisfy its initial burden on summary judgment in either of two ways." McQueen v. Wells Fargo Home Mortg., 955 F. Supp. 2d 1256, 1262 (N.D. Ala. 2013) (citing Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993)).  "First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand." Id. (citation omitted).  If this occurs, "the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. (citation omitted).  Or second, movant may "provide affirmative *evidence* demonstrating that the non-moving

5

party will be unable to prove [his] case at trial." Id. (citation omitted and alterations in original).

"Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions." Preis v. Lexington Ins. Co., 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007). Essentially, the Court has no duty "to distill every potential argument that could be made based upon the materials before it on summary judgment." Id. (citing Resol. Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)). Accordingly, the Court will only review the materials the Parties specifically cite and legal arguments they expressly advance. See id.

The Clerk of Court provided each Party notice of the summary judgment motions, the right to file affidavits or other materials in opposition, and the consequences of default. (Docs. 32, 33.) For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985), are satisfied. Each Party had ample time to file replies, and each did so. The time for filing materials has expired, the issues have been thoroughly briefed, and the motions are now ripe for consideration. In reaching its conclusions herein, the Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in the case.

## III. DISCUSSION

Both Parties move for summary judgment on Plaintiff's FMLA interference claim; thus, the Court will analyze the motions together. The FMLA provides "eligible employees" a total of 12 workweeks of leave during any 12-month period for one or more the following: . . . (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious medical condition." 29 U.S.C. § 2612(a)(1). Plaintiff alleges "Defendant violated the FMLA by (1) failing to notify [him] of his FMLA rights after learning of his need for leave, (2) failing to allow [him] FMLA leave, and (3) terminating [his] employment instead of permitting him to take FMLA leave." (Doc. 1, at 2-3.) "Interference claims are those claims 'in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the FMLA.'" Worst v. Glynn Cnty. Sch. Dist., No. CV 210-137, 2012 WL 1068135, at *5 (S.D. Ga. Mar. 29, 2016) (quoting Strickland v. Water Works and Sewer Bd. of the City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001)). "To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." Strickland, 239 F.3d at 1206-07 (citations omitted). Plaintiff is not required to allege Defendant intended to deny the right; Defendant's motives are irrelevant. See id. at 1208. However, in order to bring an interference claim under the FMLA, Plaintiff must first

demonstrate he was qualified for a FMLA benefit. <u>See</u> <u>Hegre v.</u> <u>Alberto-Culver USA, Inc.</u>, 485 F. Supp. 2d 1367, 1377 (S.D. Ga. 2007) (citations omitted). While Plaintiff must show SG was suffering from a serious health condition, that alone is insufficient for him to earn FMLA leave. <u>White v. Beltram Edge</u> <u>Tool Supply, Inc.</u>, 789 F.3d 1188, 1195 (11th Cir. 2015) (citations omitted). He must also show he gave Defendant notice of his need for leave, and an interference claim will only succeed it he gave proper notice. <u>Id.</u>

The FMLA provides an eligible employee 12 weeks of leave during a 12-month period in order to care for a child if such child has a serious health condition. 29 U.S.C. § 2612(a)(1)(C). "An employee's notice of [his] need for FMLA leave must satisfy two criteria – timing and content – both of which differ depending on whether the need for leave is foreseeable or unforeseeable." <u>White</u>, 789 F.3d at 1195. For timing, if the need for leave is foreseeable, an employee must give an employer at least 30 days advance notice, unless 30 days is impracticable, in which notice must be given within a practicable time. <u>Id.</u> (citation omitted). However, if the need for leave is unforeseeable, then the 30-day requirement does not apply. <u>Id.</u> (citation omitted). In that situation, "a practical standard applies: 'an employee whose need for leave is unforeseeable must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case.'" <u>Id.</u> at 1195-96 (quoting 29 C.F.R. § 825.303(a))

(alterations adopted).   For content, "[a]s a general rule, an employee need not explicitly mention the FMLA when giving notice to [his] employer." Id. at 1196 (citation omitted).  However, the FMLA and its regulations require the notice convey certain information depending on whether such leave is foreseeable or unforeseeable.  See id.  If foreseeable, notice must make the employer aware of the employee's needs and the anticipated timing and duration; if unforeseeable, the employee must provide sufficient information for the employer to determine whether FMLA may apply to the leave request.   Id. (citing 29 C.F.R. §§ 825.302(b)-(c)).

There is no dispute Plaintiff was an eligible employee, thus entitled to FMLA benefits if the other qualifications are satisfied.  (Doc. 37, at 6.)   However, there are arguments regarding the rest of his eligibility and regarding the sufficiency of his notice.  Defendant moves for summary judgment on the basis that Plaintiff was not entitled to FMLA leave because he did not follow its usual and customary procedure for requesting FMLA leave, did not provide proper notice pursuant to the FMLA, and because SG did not suffer from a serious health condition.[1]  (Doc. 29, at 6-14.)   Plaintiff disputes Defendant's contentions and moves for summary judgment on his own, arguing the record establishes each

---

[1] Defendant also argues Plaintiff was not entitled to leave under the Families First Coronavirus Response Act; however, there was no claim asserted under this Act so the Court will not address this argument. (See Doc. 29, at 14.)

element of his FMLA claim, SG suffers from a serious health condition, he was entitled to but did not receive notice of his eligibility for FMLA leave, notice of his rights under the FMLA, or the ability to take up to 12 weeks of leave, and he was prejudiced because of Defendant's interference with his FMLA rights.  (Doc. 30, at 7-16.)  The Parties dispute each other's motions with essentially the same arguments they make in their own motions for summary judgment; thus, the Court will analyze all of the arguments and elements of the claim together.

## A. Defendant's Usual and Customary Procedure of Notice

Defendant argues Plaintiff failed to comply with its usual and customary procedure for requesting FMLA leave, thus making him ineligible for leave, and causing his interference claim to fail. (Doc. 29, at 6.)  Plaintiff disputes this assertion, arguing Defendant's request policy violates the FMLA and applicable Department of Labor ("DOL") procedures.  (Doc. 38, at 9.)

"An employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.302(d).  "Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied."  Id.  Defendant argues its usual and customary procedure of requesting FMLA leave is to contact FMLA Source, Defendant's third-party administrator pursuant to its FMLA

10

leave policy.  (Doc. 29, at 6.)  Plaintiff argues Defendant's FMLA request requirements violate the FMLA and DOL regulations because they impose a heightened standard for requesting FMLA leave that does not apply when requesting other forms of leave.  (Doc. 38, at 9-10.)  He argues he requested FMLA leave by submitting his "Employee Activity Request Form" as required to request other forms of leave, and such actions should have been adequate notice to Defendant of his need for FMLA leave.  (Id. at 10.)

The Court finds there is certainly a split in authority regarding the issue of whether an employer can require an employee to do more to apply for FMLA leave as opposed to any other type of leave.  See Moore v. GPS Hosp. Partners IV, LLC, 383 F. Supp. 3d 1293 (S.D. Ala. 2019); Duran v. Stock Bldg. Supply W., LLC, 672 F. App'x 777 (9th Cir. 2017).  However, the Court does not find this determination necessary for its analysis because the evidence illustrates Plaintiff requested leave in the same way as usual for leave requests, by submitting his "Employee Activity Request Form;" however, at that time, he was instructed by Human Resources on how to then apply for FMLA leave specifically.  (Doc. 31, at 4.)  Furthermore, the evidence illustrates Plaintiff was instructed by Defendant that he had two weeks of approved leave in which to find childcare, and that he was to submit a FMLA leave request if he needed additional time off; however, he never requested the FMLA leave.  (Doc. 39, at 3.)  While there is some dispute whether Plaintiff read the email from Human Resources

regarding contacting FMLA Source, it is undisputed Plaintiff had access to the employee handbook that outlined the instructions for applying for FMLA leave, and that he previously acknowledged receipt of the Wage and Hour Division's FMLA poster that also provided notice of Defendant's FMLA leave procedures. (See Doc. 29, at 7-10.) Since Plaintiff was clearly aware of Defendant's procedures and he was instructed upon requesting leave in the "typical" way of what he had to do next to finish requesting FMLA leave, the Court takes no issue with Defendant's usual custom and procedure for requesting FMLA leave.

Now the Court turns to see whether Plaintiff complied with Defendant's notice procedures. The record is clear, and Plaintiff does not dispute, that he failed to contact FMLA Source to formally request FMLA leave. (Doc. 28, at 5.) However, Plaintiff disputes whether Defendant notified him of his need to contact FMLA Source to request FMLA leave. (Doc. 38, at 13.) Plaintiff cites to an excerpt from Defendant's employee handbook and argues the handbook does not instruct employees to contact FMLA Source. (Id. (citing Doc. 29-1, at 114).) Defendant disputes this contention, citing to the entire provision from the handbook, in which it provides an outline of what FMLA leave is and how one qualifies, and then instructs employees: "See the FMLA poster and/or speak with Human Resources for more detail. FMLA is administered by a third party company called FMLASource, which can be reached at 1-855-xxx-xxxx. Employees who do not meet these requirements may apply for a

Personal Leave of Absence (described later in this Handbook)."
(Doc. 45, at 4 (quoting Doc. 29-1, at 114).) 29 C.F.R. § 825.300
requires employers to comply with numerous notice requirements for
FMLA leave, relevantly: "When an employee requests FMLA
leave . . .the employer must notify the employee of the employee's
eligibility to take FMLA leave within five business days, absent
extenuating circumstances." Plaintiff argues whether he received
actual notice of Defendant's requirement to contact FMLA Source is
disputed because the handbook does not instruct him to do so, and
Defendant never otherwise informed him of its requirement he do so
either. (Doc. 38, at 13.) As outlined above, the handbook clearly
states FMLA Source handles FMLA leave; furthermore, there was
certainly an email sent by Defendant to Plaintiff instructing him
on how to request leave from FMLA Source. (Doc. 28, at 5.)
However, Plaintiff argues he never received the email containing
such instructions because he was already on leave without access
to his work email when it was sent; therefore, it is disputed
whether Defendant adequately complied with its notice obligations.
The Court finds reasonable jurors could find for either party on
this point and summary judgment is not appropriate for either party
with regards to notice. Since there are disputes about the
adequacy of notice, the Court will not address the Parties'
additional arguments on this element regarding whether Plaintiff's
leave was foreseeable or unforeseeable.

## B. Serious Health Condition for SG

Defendant next moves for summary judgment on the basis that regardless of the notice, Plaintiff was not entitled to FMLA leave because there is insufficient evidence SG suffered from a serious health condition.   (Doc. 29, at 11-14.)   Plaintiff argues that this argument fails, as SG did in fact have a serious health condition.   (Doc. 38, at 21-25.)   The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."   29 U.S.C. § 2611(11).

> A serious health condition involving continuing treatment by a health care provider includes any one or more of the following: . . .
>
> (c) Chronic conditions.   Any period of incapacity or treatment for such incapacity due to a chronic serious health condition.   A chronic serious health condition is one which:
>> (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;
>> (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>> (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.115.   "Incapacity means the 'inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery

therefrom.   <u>White</u>,  789  F.3d  at  1194  (quoting  29  C.F.R.  §
825.113(b)).

    Defendant  asserts  SG  does  not  qualify  as  having  a  serious
health  condition  because  he  was  not  treated  for,  nor  did  he
contract,  a  serious  health  condition,  and  the  only  recommendation
evidenced  in  the  case  is  Dr.  Clark's  recommendation  that
Plaintiff's  wife  be  allowed  to  teach  remotely.   (Doc. 29, at 12.)
Furthermore,  it  argues  there  is  no  evidence  normal  childcare  was
insufficient  or  unavailable  for  SG.   (<u>Id.</u>  at  13-14.)   Defendant
argues  it  cannot  be  expected  to  determine  whether  an  employee  is
eligible  for  FMLA  leave  when  the  employee  fails  to  provide  evidence
of  a  condition  or  otherwise  meaningfully  participates  in  the
process,  which  providing  such  documentation  is  required  for
requesting  leave.   (<u>Id.</u>  at  14.)   Plaintiff  rebuts  Defendant's
characterization,  asserting  SG  had  a  chronic  condition  that  met
the  criteria  outlined  above;  specifically,  he  argues  "SG  suffers
from  various  illnesses,  including  recurrent  respiratory  tract
infections,  RSV,  premature  birth,  and  chronic  lung  disease."  (Doc.
38,  at  22-23.)   Furthermore,  he  argues  SG  was  "incapacitated,"
pursuant  to  the  relevant  regulations,  at  the  time  of  his  request
for  FMLA  leave  because  he  was  forced  to  quarantine  at  home  and
unable  to  attend  daycare  due  to  the  COVID-19  pandemic,  which  he
argues· is  analogous  to  the  "inability  to  .  .  .  attend  school"  as
outlined  in  29  C.F.R.  §  825.113(b).   (<u>Id.</u>  at  23.)

The record is undisputed that SG has a history of recurrent respiratory tract infections, RSV, premature birth, and chronic lung disease, and due to these, Dr. Clark recommended he be self-quarantined; nevertheless, there is much dispute between the Parties as to whether these conditions and situation qualify him as one who suffers from a serious health condition pursuant to FMLA regulations. (See Doc. 28, at 7; Doc. 29, at 14; Doc. 38, at 22-23. Based on the undisputed facts, the Court finds SG did suffer from a chronic serious health condition because he is seen by a health care provider at least twice a year, has recurring bouts of sickness, especially RSV, and they occur on episodic rather than continuing basis. However, the root of the issue is whether there was any period of incapacity, or treatment for such incapacity, due to his chronic serious health condition. See 29 C.F.R. § 825.115(c). While Plaintiff argues SG's inability to attend daycare qualifies as incapacity, Defendant argues there is no evidence normal childcare was insufficient or unavailable for SG. (Doc. 29, at 14.) Further, Defendant argues there is no evidence of continuing treatment at the time Plaintiff allegedly requested FMLA leave. (Doc. 45, at 9.)

The Court finds there is a genuine dispute of material fact as to whether SG suffered from a period of incapacity or period of treatment for such incapacity by the fact his doctor recommended Plaintiff and his wife quarantine him to avoid COVID-19 exposure. Plaintiff points to the quarantine as an "inability to attend

16

school," but Defendant argues the doctor's statement was only a recommendation, and there is no evidence SG was *unable* to receive regular childcare. (Doc. 38, at 23; Doc. 45, at 9.) Since the evidence in the record could be interpreted to find for either Party on this fact, there is a genuine dispute and summary judgment is not appropriate at this time. See Brady v. Carnival Corp., 33 F.4th 1278, (11th Cir. 2022) ("[A] genuine dispute exists if a jury applying the applicable evidentiary standard could reasonably find for either the plaintiff or the defendant as to the material fact." (citation omitted and alterations adopted)).

## C. Conclusion

Since the Court has found a genuine dispute of material fact as to notice and as to whether SG suffered from a serious health condition, and that jurors could find for either Party on both elements, summary judgment is not warranted for either side. Because these elements contain genuine disputes of material fact, the Court finds it unnecessary to address the rest of the Parties' arguments in each of their motions for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Doc. 27) is **DENIED** and Plaintiff's motion for summary judgment (Doc. 30) is **DENIED**. The case will proceed to trial in due course on Plaintiff's interference claim only.

**ORDER ENTERED** at Augusta, Georgia, this 28th day of March, 2023.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA